IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-00206-GCM

| | | |
|---|---|---|
| JOHN W. TAYLOR, <br> LINDA W. SIMPSON <br><br> **Appellants,** <br><br> v. <br><br> TRACY LAYNE CAILLAUD, <br><br> **Appellee.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Appellants' appeal from two orders of the bankruptcy court: an October 21, 2014 Order Overruling Trustee's Objection to Claim of Exemption, and an April 23, 2015 Order Denying Trustee's Motion for a New Trial. (Doc. No. 1) For the reasons set forth below, the Court finds no error and **AFFIRMS** the ruling of the bankruptcy court.

## I.  STANDARD OF REVIEW

This Court has jurisdiction over "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). The Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *Campbell v. Hanover Ins. Co.*, 457 B.R. 452, 456 (W.D.N.C. 2011). "Typically, mixed questions of law and fact are also reviewed *de novo*." *Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 686 (E.D.N.C. 2009); *see In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

## II.     BACKGROUND

The essential facts of this case are not in dispute.  (Doc 1-1; Doc. No. 4)  Appellee Tracy Layne Caillaud filed a voluntary petition for Chapter 7 Bankruptcy on April 19, 2013.  Shortly thereafter, her father died intestate.  Appellee and her two siblings were his sole heirs.  Caillaud signed a sworn Application for Letter of Administration attesting that her father's home had a value of $189,000.  Around the same time, Caillaud's former counsel reminded her of her obligation to disclose to the Trustee any property that she inherited within six months of filing for bankruptcy.  Caillaud told her attorney that because her father's debts had exceeded his assets, she would not inherit any property as a result of his death.  Counsel relayed this information to the Trustee.

Caillaud and her siblings subsequently listed their father's home for sale.  It sold on March 14, 2014 for $275,000.  After the siblings paid their father's debts, they were left with net sale proceeds of $28,225.40.  Caillaud did not disclose this to the Trustee, who learned of the sale during a property records search in April 2014.  At that time, the Trustee contacted Caillaud's attorney and requested a copy of the settlement statement from the sale.   Counsel responded that the siblings had received a profit "in the mid 20k range" and that $6,000 had been distributed to Caillaud.  The Trustee demanded that Caillaud turn over the $6,000 and requested copies of her bank statements to confirm the amount that she had obtained.  He reminded counsel that Caillaud's failure to inform the Trustee of the proceeds of the sale was grounds for revoking her discharge.

Caillaud ultimately admitted that her share of her father's estate was "close to $16,000."  She claimed that she could not turn these funds over to the bankruptcy estate, and her attorney suggested that the parties agree to a payment plan under which Caillaud would pay $500 per

month. The Trustee refused. In response, Caillaud filed a Motion to Amend Exemptions. She argued that she had $4,980.72 in available exemptions under N.C. Gen. Stat. § 1601(a) and that she should be permitted to use those exemptions to offset a portion of the proceeds from her father's estate. The Trustee objected and asked the bankruptcy court to deny her motion. The Trustee argued that Caillaud's bad faith concealment and disposal of the funds from the sale were grounds for denying her motion.

The bankruptcy court held that the Trustee's argument was foreclosed by the Supreme Court's recent decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014). (Doc. No. 1-1) The bankruptcy court found that under *Siegel* it had no equitable power to deny Caillaud the exemptions that she claimed unless North Carolina law explicitly authorized such action. Looking to North Carolina law, the court concluded that no provision empowered it to deny exemptions on grounds of bad faith. The bankruptcy court further noted that Caillaud's conduct could still result in the revocation of her discharge, sanctions, or an order directing her to pay attorney's fees. The bankruptcy court also directed the Clerk to forward a copy of its order to the United States Attorney's Office for the Western District of North Carolina, noting that Caillaud was subject to criminal prosecution. The bankruptcy court issued an order overruling the Trustee's objection to Caillaud's exemptions.

The Trustee subsequently filed a Motion for a New Trial, joined by the Bankruptcy Administrator. In its Motion, the Trustee argued that a new trial was warranted so that the bankruptcy court could consider two additional issues: (1) whether Caillaud had waived her right to claim an exemption under North Carolina law, and (2) whether the fact that Caillaud had purposely asserted two legally inconsistent positions during her bankruptcy proceeding—namely that she had and had not received an inheritance from her father's estate—allowed the

bankruptcy court to find that she was estopped from claiming exemptions. (*In re. Tracy Layne Caillaud*, 3:13-bk-30835, Doc. No. 31) The Bankruptcy Administrator asserted additional arguments that it claimed had not been considered during the initial hearing and thus merited a new trial: (1) the *Siegel* language relied on by the bankruptcy court constituted only dicta; (2) Federal Rule of Bankruptcy Procedure 4003(b)(2) permits a trustee to file objections to a claim of exemption "at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption"—which suggests that objections are permissible and may be acted upon by the bankruptcy court; and (3) North Carolina courts treat modification of exemptions differently than a debtor's original exemptions claim and would not allow Caillaud's modification under the circumstances of this case. (*In re. Caillaud*, 3:13-bk-30835, Doc. No. 36)

The bankruptcy court denied the motion. (Doc. No. 1-2) It pointed out that nearly every court to consider *Siegel* in this context had held itself constrained by the relevant dicta, and that the Bankruptcy Code governs in the event of a conflict between the Code and the Bankruptcy Rules. The court opined that, while the Bankruptcy Administrator's position would be more consistent with longstanding practice and help restore protections against unscrupulous debtors, the responsibility for adopting such a system was likely the province of Congress and state legislatures.

The Trustee and Bankruptcy Administrator filed this timely appeal. Appellee, whose counsel withdrew on May 1, 2015, is proceeding *pro se* and has declined to file a brief.

### III. ANALYSIS

In this case, Appellants have designated four issues for appeal:

1. Whether the Bankruptcy Court erred by granting the Debtor's Motion to Amend Exemptions and overruling the Trustee's Objection thereto after the Debtor fraudulently concealed the asset from the bankruptcy Trustee.

4

2. Whether the Bankruptcy Court erred in its application of North Carolina law by granting the Debtor's Motion to Amend Exemptions when there had been no change of circumstances as required by N.C. Gen. Stat. § 1C-1603(g).
3. Whether the Bankruptcy Court erred by granting the Debtor's Motion to Amend Exemptions when she failed to comply with the requirements of Rule 1007(h) of the Federal Rules of Bankruptcy Procedure.
4. Whether the Bankruptcy Court erred in denying the Trustee's Motion for a New Trial on the Debtor's Motion to Amend Bankruptcy Schedules to Exempt Property and the Bankruptcy Administrator's Joinder thereto.

The first three issues present mixed questions of law and fact which this Court will review *de novo*. The fourth issue, denial of the Appellants' Motion for a New Trial, is reviewed for an abuse of discretion. *Gregg v. Ham*, 678 F.3d 333, 342 (4th Cir. 2012).

### A. Overruling of Trustee's objection

Under Chapter 7 of the Bankruptcy Code, an individual can effectuate a discharge of her debts by liquidating her assets and distributing the proceeds to her creditors. *See Siegel*, 134 S. Ct. at 1192. However, the Bankruptcy Code provides that certain types of assets, called exempt property, may be retained by the debtor post-bankruptcy. 11 U.S.C. § 522(b)(1). The debtor can choose to forgo federal exemptions in order to claim particular exemptions that are available under state law. 11 U.S.C. § 522(b)(3)(A). The Bankruptcy Rules also grant debtors a "general right to amend" their petitions, lists, schedules, and statements during their bankruptcy proceedings. *See* Fed. R. Bankr. P. 1009(a). These "may be amended by the debtor as a matter of course at any time before the case is closed." *Id.*

In *Siegel*, the Supreme Court held that the bankruptcy court had no power to equitably surcharge administrative expenses against a debtor's claimed exemptions on the grounds that the debtor had engaged in fraudulent or bad faith conduct. The Court explained that the bankruptcy court's broad power under 11 U.S.C. § 105(a) to "sanction abusive litigation practices," does not include the authority to "contravene specific statutory provisions" in the Bankruptcy Code—one

of which specifies that exempt property is not liable for the payment of "any administrative expense." *Siegel*, 134 S. Ct. at 1194 (internal quotation marks and citation omitted); *see* 11 U.S.C. § 522(k). The Supreme Court also rejected the argument that bankruptcy courts have an inherent equitable power to deny exemptions, explaining:

> [Section] 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt. Siegel insists that because § 522(b) says that the debtor "may exempt" certain property, . . . the court retains discretion to grant or deny exemptions even when the statutory criteria are met. But the subject of "may exempt" in § 522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion. A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.

*Id.* at 1196. Under federal law, the Supreme Court found, no statutory provision empowers the bankruptcy court "to deny exemptions based on a debtor's bad-faith conduct." *Id.*

The Supreme Court also recognized in Siegel that "when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." *Id.* at 1196-97. Accordingly, North Carolina law is also relevant to this appeal. Under North Carolina law, personal property exemptions under N.C. Gen. Stat. § 1C-1601 "cannot be waived" except under three circumstances:

> (1) Transfer of property allocated as exempt (and in that event only as to the specific property transferred);
>
> (2) Written waiver, after judgment, approved by the clerk or district court judge. The clerk or district court judge must find that the waiver is made freely, voluntarily, and with full knowledge of the debtor's rights to exemptions and that he is not required to waive them; or
>
> (3) Failure to assert the exemption after notice to do so pursuant to G.S. 1C-1603. The clerk or district court judge may relieve such a waiver made by reason of mistake, surprise or excusable neglect, to the extent that the rights of innocent third parties are not affected.

6

N.C. Gen. Stat. § 1C-1601(c). The North Carolina Supreme Court has cautioned that "provisions which restrict a debtor's access to his exemptions should be construed narrowly." *Household Fin. Corp. v. Ellis*, 419 S.E.2d 592, 595 (N.C. Ct. App. 1992), *aff'd*, 429 S.E.2d 716 (N.C. 1993) (citing *Elmwood v. Elmwood*, 244 S.E.2d 668, 678 (1978)). Thus, debtors have long been "allowed a great deal of flexibility in claiming and maintaining their exemptions" under the state's law. *Id.* (citing *Comm'r of Banks v. Yelverton*, 204 N.C. 441, 168 S.E. 505 (1933)).

North Carolina law further provides that after a debtor has filed her exemptions, they may be modified "upon a change in circumstances by motion in the original exemption proceeding, made by the debtor or anyone interested." N.C. Gen. Stat. § 1C-1603(g). The statute clarifies that "[a] substantial change in value may constitute changed circumstances." *Id.*

Appellants argue that the bankruptcy court should have denied Caillaud's Motion to Amend Exemptions for two reasons: (1) the relevant language in *Siegel* is only dicta, and (2) Caillaud was not entitled to amend her exemptions under North Carolina law. (Appellants Br. at 13-24, Doc. No. 4) The Court addresses each argument in turn.

To begin with, the Court agrees with the bankruptcy court's determination that it was not free to disregard the Supreme Court's pronouncements in *Siegel*—even if they amounted to only dicta. *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 n.2 (4th Cir. 2012) ("Even assuming for the sake of argument that [the relevant portion of the opinion is dicta], we cannot simply override a legal pronouncement endorsed just last year by a majority of the Supreme Court."). Indeed, the Fourth Circuit has repeatedly cited the proposition that federal courts are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996); *accord. Yanez-Marquez v. Lynch*, 789 F.3d 434, 450 (4th Cir. 2015); *United States v. Fareed*, 296 F.3d 243, 247 (4th Cir. 2002). For this reason,

nearly all of the courts to interpret *Siegel* have held that it denies bankruptcy courts the power to deny claims for exemptions on bad faith grounds. *See, e.g.*, *In re Elliott*, 523 B.R. 188, 189 (B.A.P. 9th Cir. 2014); *In re Bogan*, 534 B.R. 346, 349 (Bankr. W.D. Wis. 2015); *In re Mateer*, 525 B.R. 559, 565-66 (Bankr. D. Mass. 2015). Moreover, this Court has recently interpreted *Siegel* the same way, explaining, "[t]he Bankruptcy Code . . . does not authorize a Bankruptcy Court to deny exemptions based on a debtor's bad faith." *Joseph v. Cooper*, No. 1:14-CV-223, 2015 WL 5714611, at *8 n.12 (W.D.N.C. Sept. 29, 2015).

Appellants have located one case, *In re Woolner*, in which a bankruptcy court disregarded *Siegel*'s dicta and held that it had the equitable power to deny or disallow an exemption on the basis of the debtor's bad faith conduct. No. 13-57269-WSD, 2014 WL 7184042, at *4 (Bankr. E.D. Mich. Dec. 15, 2014). No other court appears to have agreed with the opinion's analysis. *See In re Lua*, 529 B.R. 766, 773 (Bankr. C.D. Cal. 2015), *aff'd*, No. CV 15-04026-CJC, 2015 WL 7176005 (C.D. Cal. Nov. 10, 2015) (collecting cases). Moreover, the United States Court of Appeals for the Sixth Circuit later clarified that the bankruptcy court had erred, noting "lower courts are obliged to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015) (alteration adopted) (quoting *Am. Civil Liberties Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 447-48 (6th Cir.2010)). The Sixth Circuit went on to hold that "*Siegel* prohibits the bankruptcy court from disallowing the debtors' claimed exemptions because of their alleged bad faith and fraudulent conduct." *Id.* In short, no other court has followed the rationale of *In re Woolner*, and indeed even the court that decided that case is constrained against applying it by the Sixth Circuit's subsequent binding precedent. For these reasons, the Court agrees with the bankruptcy court's finding that, pursuant to the

8

Supreme Court's decision in *Siegel*, it lacked the authority to deny Appellee her claimed exemptions on account of her bad faith concealment of her inheritance.

The only remaining question, then, is whether the bankruptcy court erred in its application of North Carolina law. Under *Siegel*, this Court must examined whether North Carolina allows for the denial of exemptions on grounds of bad faith or fraudulent conduct. 134 S. Ct. at 1196-97. Appellants have not identified any North Carolina case allowing an exemption to be denied on the basis of bad faith or fraudulent conduct. Rather, they argue that Caillaud's Motion to Amend Exemptions was invalid under North Carolina law because she did not demonstrate a change in circumstances, as required by N.C. Gen. Stat. § 1C-1603(g). The Court disagrees. Caillaud filed her petition for bankruptcy on April 19, 2013. (*In re. Caillaud*, 3:13-bk-30835, Doc. No. 1) When she filed her Motion to Amend Exemptions on June 30, 2014, her circumstances had certainly changed—she had received an substantial inheritance and owed the bankruptcy estate thousands of dollars. (*In re. Caillaud*, 3:13-bk-30835, Doc. No. 18) The Court finds that this change was sufficient to satisfy the requirements of N.C. Gen. Stat. § 1C-1603(g), particularly in light of the principle that statutory provisions which restrict a debtor's access to exemptions are to be construed narrowly. *See Household Fin. Corp. v. Ellis*, 419 S.E.2d at 595. Thus, the Court finds no basis for concluding that the bankruptcy court erroneously interpreted North Carolina law.

**B. Federal Rule of Bankruptcy Procedure 1007(h)**

Rule 1007(h) of the Federal Rules of Bankruptcy Procedure provides that if a debtor acquires, or becomes entitled to acquire, any property interest, she must file a supplemental schedule within 14 days. The Rule further provides, "[i]f any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the

9

exemptions in the supplemental schedule." *Id.* It also specifies that the debtor continues to have a duty to file a supplemental schedule notwithstanding the closing of her case. *Id.*

Appellants argue that Appellee's failure to comply with this rule should have led the bankruptcy court to deny her Motion to Amend Exemptions. (Appellants' Br. at 25-29, Doc. No. 4) The Court need not address this argument because Appellants have waived it. Failure to raise an argument to the bankruptcy court waives that argument, particularly where the party had reason to know of its applicability at that stage of the proceedings. *In re Rare Earth Minerals*, 445 F.3d 359, 365 (4th Cir. 2006); *In re Lane*, 991 F.2d 105, 107 (4th Cir. 1993). In this case, the Trustee filed an Objection to Caillaud's Motion to Amend and Motion for a New Trial, which together asserted at least three reasons to deny Caillaud's Motion. The Bankruptcy Administrator also suggested three additional grounds for denying Appellee's exemptions in its Motion for Joinder. Given the numerous opportunities that Appellants had to apprise the Bankruptcy Court of any Rule 1007(h) issues, the Court concludes that their failure to do so waived these arguments.

### C. New trial

Under the Federal Rules of Bankruptcy Procedure, Rule 59 of the Federal Rules of Civil Procedure sets the standard for evaluating a motion for a new trial in a bankruptcy proceeding. Fed. R. Bankr. P. 9023. Pursuant to Rule 59, a court may grant a motion for a new trial after a nonjury trial "for any reason for which a rehearing has heretofore been granting in a suit of equity in federal court."

Appellants argue that the district court abused its discretion in denying a new trial because when it ruled on the Trustee's Objections, it failed to analyze North Carolina's statutory requirements for modifying an exemption and because it did not address the implications of Fed.

R. Bankr. P. 1007(h). (Appellants' Br. At 11-13, Doc. No. 4) While it is true that the bankruptcy court did not expressly address North Carolina's rule on modifying bankruptcy exemptions in its order, this fact alone does not necessitate a new trial. The bankruptcy court did not commit legal error in holding that North Carolina law did not supply grounds for sustaining the Trustee's Objection, and thus the denial of its motion for a new trial did not constitute an abuse of discretion. Moreover, as the Court has already explained, Appellants never brought Fed. R. Bankr. P. 1007(h) to the bankruptcy court's attention and cannot now complain that the court did not consider it. For these reasons, the bankruptcy court did not err in denying Appellants' Motion for a New Trial.

## IV. CONCLUSION

The Court echoes the bankruptcy court's condemnation of Caillaud's actions and reiterates that the Trustee is not without recourse under the circumstances. As the bankruptcy court explained, Appellee's conduct may warrant revocation of her discharge and other penalties. Nevertheless, the Court finds that neither North Carolina nor federal law provide a basis to deny Caillaud's exemptions. Additionally, the bankruptcy court did not abuse its discretion in denying Appellants' request for a new trial. Therefore, it is ordered that the Bankruptcy Court's orders are **AFFIRMED** and this appeal is hereby **DISMISSED**. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Signed: December 1, 2015

Graham C. Mullen
United States District Judge